FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D. N.Y:
★ MAY 28 2008 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
MICHAEL HAMMER,

                  Plaintiff,

    -against-

FEDEX, et al.,

                  Defendants.

----------------------------------------------------------- X

**CORRECTED MEMORANDUM**
**DECISION AND ORDER**

07 Civ. 1445 (BMC)(KAM)

**COGAN**, District Judge.

This discrimination case under the Age Discrimination in Employment Act, 29 U.S.C. 621 *et seq.*, New York State Human Rights Law, Executive law, § 290 *et seq.*, and the Administrative Code of the City of New York § 8-101 *et seq.*, is before the Court on defendants' motion for summary judgment. Familiarity with the facts is assumed.

Like so many employment discrimination cases, the determinative issue is whether what plaintiff contends is wholly unreasonable treatment of him as an employee was in fact either a pretext for illegal discrimination or reflective of a discriminatory motive. Construing the facts most favorably to plaintiff, his termination at the hands of defendants could be viewed as unreasonable, and indeed a particularly harsh way for an employer to treat an employee with 23 years of service. Plaintiff's supervisor (Arias), again construing the facts most favorably to plaintiff, performed a limited investigation of plaintiff's alleged misconduct and leapt to his conclusion that plaintiff had falsified records rather than made innocent mistakes. I am not going to resolve the parties' argument as to whether plaintiff in fact falsified his delivery records, as defendants contend, or, in contrast, whether plaintiff merely made innocent mistakes because of

his lack of mastery of defendants' new technology, as plaintiff contends. I assume the latter for purposes of this motion, as plaintiff has arguably presented enough facts for a jury to reach that conclusion.

However, the assumed fact that plaintiff's supervisor was inept or unfair, or both, does not address, let alone answer, the question of whether plaintiff was the victim of illegal age discrimination. A member of a protected class is no more entitled to protection from bosses of uneven temperament, limited perspective or sagacity, or lack of empathy than anyone else in the workforce. See, e.g., Ogbo v. N.Y. State Dep't of Fin., 99 Civ. 9387, 2001 WL 986546, at *7 (S.D.N.Y. Aug.28, 2001) (summary judgment granted dismissing claims of plaintiff, who "is Nigerian and describes himself as Black," where plaintiff's supervisor "cursed at him and insulted him with names like 'horse's ass' and 'dummy'" because "plaintiff has not met his burden of showing that these alleged comments were motivated by discrimination, a necessary ingredient since an abusive workplace, without more, is not actionable under Title VII.") To show that it might be something more than an unreasonable boss that is at issue, plaintiff must point to some circumstances upon which a jury could reasonably reach a conclusion that plaintiff's age was a substantial factor in his termination.

On that score, the evidence here is very, very thin. It comes down to four facts: (1) when plaintiff was fired for the alleged falsifications, his Senior Manager, Troy, said, "you've been here 23 years, you should have known better," which plaintiff interprets as reflecting enmity for older people; (2) at his deposition in this case, Arias, when asked his age, said "36. Jeez, I'm getting old," which plaintiff again interprets as showing hostility towards those with more age; (3) upon plaintiff's termination, defendant hired a 25 year old replacement, named LeBron; (4) LeBron also committed a rules infraction which Arias described in his deposition as just as

serious as plaintiff's, yet LeBron was reprimanded instead of terminated. Plaintiff's argument is simple: when these facts are combined with the astonishingly bad process that led to his termination, a reasonable jury could draw the inference that the process was not just astonishingly bad, but that it was pretextual, an excuse for terminating plaintiff because of his age.

I believe that the facts plaintiff has put forward are sufficient to satisfy the fourth prong of a *prima facie* case of discrimination required under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), namely, whether the circumstances surrounding plaintiff's termination permit an inference of discrimination. The Second Circuit has repeatedly described that burden on summary judgment as *de minimis*, see, e.g., Beyer v. County of Nassau, 524 F.3d 160 (2d Cir. 2008), and that term well describes the limited extent of the facts supporting plaintiff's age discrimination claim.[1]

Although I find that this minimal burden has been satisfied, I do so after discounting entirely the first two of the four facts upon which plaintiff relies, as they have little if any value. Troy's telling plaintiff that, considering the length of plaintiff's employment with FedEx, plaintiff should have known better than to falsify records, can only be construed as a reference to length of experience, not age hostility, and the two are not synonymous: the hostility is to the falsification of records, and the length of experience is included as a qualifier, an explanation of why the falsification is particularly unforgiveable. Plaintiff reaches too far when he seeks to make more of it. Similarly, Arias' statement at his deposition, when asked his age, that he is 36 and then fretting that he is "getting old" is just self-absorbed musing in which many people

---

[1] I reject defendants' argument that plaintiff fails to satisfy the second prong of the McDonnell-Douglas test, namely, that he is qualified for the job, as that would require a finding that plaintiff did intentionally falsify his delivery records, a finding that the record does not support as a matter of law.

engage at some point, not the damning testimonial admission of gerasophobia that plaintiff claims. Nevertheless, the hiring of a younger replacement worker and a colorable showing that he was cut more slack for comparable misconduct than his older predecessor is sufficient to make the minimal showing required for a *prima facie* case.

A plaintiff is of course entitled to rely on the same evidence that makes his *prima facie* case to rebut a defendant's purported business justification defense as pretextual or to demonstrate that a defendant acted with discriminatory motive. See Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107 (2d Cir. 2004). However, when the facts supporting the fourth prong of the *prima facie* test barely meet that threshold, it leaves a plaintiff's case vulnerable if a defendant can offer a solid business justification for the termination. If that occurs, a plaintiff may be unable to establish through direct, statistical, or circumstantial evidence that a genuine issue of material fact exists as to whether the employer's asserted reason for its decision is false and is, more likely than not, a pretext for racial discrimination. Gallo v. Prudential Residential Servs., 22 F.3d 1219 (2d Cir. 1994).

In the instant case, defendants have adequately supported the explanation for plaintiff's termination to the point that, while a jury might find it unduly harsh, it could not reasonably find the decision to be pretextual or motivated by age discrimination. The simple fact is that all Arias cared about was the delivery reports. It is undisputed that the delivery reports showed, at least, that on multiple occasions, plaintiff had attempted deliveries when he had not actually attempted those deliveries, and that he had indicated that customers were not on site to accept deliveries when he did not know that because he had not tried to make those deliveries.

Plaintiff's point is that if Arias had only consulted other records showing the full range of plaintiff's daily activities – his manual time card and his electronic time card – he would have

been forced to recognize that plaintiff's entries on his delivery reports were innocent errors, not the product of intentional falsification. I assume that to be true for purposes of this motion, but I do not see why Arias had an obligation to go beyond the delivery reports, nor why his failure to do so should be ascribed to an age discrimination motivation. For better or worse, defendants were and are so fully enamored with the simplicity of their new tracking device that they just did not conceive that anyone could make the number of innocent delivery mistakes that plaintiff contends he made in operating it.

I reach that conclusion because there is no indication that Arias, Troy, or any other managerial personnel treated any employee with inaccurate delivery reports any differently than they treated plaintiff. To the contrary, it is undisputed that five other couriers have been terminated at plaintiff's former location for the same infraction, all of whom were younger than plaintiff and four of whom were in their twenties or thirties. Despite discovery, plaintiff has offered no evidence that anything other than these employees' delivery reports were considered in making the decision to terminate. Reliance on only the delivery reports may be bad business, and plaintiff's counsel made the point at Arias' deposition that review of other records might have lent a different perspective to the fraud versus error issue, but that alone is not evidence of age discrimination.

As far as plaintiff's proffered comparable – LeBron, the 25 year old alleged replacement who was not disciplined for allegedly similar misconduct – a picture different from plaintiff's characterization emerges based on the undisputed facts. First of all, the record is clear that LeBron was not a replacement. The replacement was someone named Ramirez. LeBron had been hired nearly a year before plaintiff was terminated. LeBron was a "swing driver," which I take to mean that he served an analogous function to that of a substitute teacher, covering a route

when the regular courier was out. It was in that capacity that LeBron covered plaintiff's former route for a few days after plaintiff was terminated until Ramirez was assigned. The conclusion cannot be drawn that defendants terminated plaintiff and then hired a younger courier to replace him.

Second, LeBron's transgression, for which he was warned instead of terminated even though he was already on probation (plaintiff was not warned at all prior to his termination), was not comparable to plaintiff's transgression. LeBron failed to timely report that he had received a speeding ticket. He did not falsify or make repeated errors in his delivery reports. Although plaintiff extracted an admission from Arias to a hypothetical question that, in Arias' view, deliberate withholding of documents is the same as falsification of documents, it is not at all clear that withholding *information* about a speeding ticket is the same as withholding *documents*. Moreover, even if the terms are interchangeable, there is simply no evidence that Arias believes that LeBron's specific transgression, failure to report a speeding ticket, is as bad as falsifying deliveries. Finally, Arias was not LeBron's supervisor. The decision to warn rather than terminate him was made by another manager. In sum, plaintiff has been unable to identify a single employee who engaged in the conduct attributed to plaintiff and was treated any differently.

The non-pretextual nature of defendants' business rationale is further demonstrated by the composition of the workforce in plaintiff's former location. Plaintiff was 48 years old at the time he was terminated. There are nineteen couriers older than him at that location. There are two who are the same age as he was when he was terminated. There are another forty-six who range from 40-47 years old. When this distribution is considered alongside the fact that defendants have terminated far younger employees for the same act for which plaintiff was

terminated, plaintiff's argument that he was "set up" for termination as a result of his age simply cannot reasonably be accepted.

In determining to grant defendants' motion, I am mindful that the Second Circuit has instructed district courts to be cautious when granting summary judgment in employment discrimination cases because the employer's intent is frequently at issue. See Holcomb v. Iona College, 521 F.3d 130 (2d Cir. 2008); Gallo, 22 F.3d 1219. However, the Second Circuit also has made it clear that summary judgment may still be appropriate "even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Airlines Inc., 239 F.3d 456, 466 (2d Cir. 2001). The function of the court on a motion for summary judgment in an employment discrimination case remains "to determine whether the 'proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995) (quoting Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994)).

I do not see how a reasonable jury could find a discriminatory motive on this evidence. Plaintiff cannot transform what is really a claim for termination without good cause into one for age discrimination simply by adding on to his termination claim the fact that he is a member of the protected class. The ADEA requires more.[2] See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33 (2d Cir. 2000) ("The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." (quotations and alterations omitted)).

---

[2] The standards applicable to claim under the ADEA are the same as those required under Title VII, the State's Human Rights Law, and the City's Administrative Code. See, e.g., Tyler v. Bethlehem Steel Corp., 958 F.2d 1176 (2d Cir. 1992).

## CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk is directed to enter judgment.

**SO ORDERED.**                                        /s/(BMC)
                                                    _____
                                                        U.S.D.J.

Dated: Brooklyn, New York
      May 28, 2008